# Charles Wert, Plff. in Err., *v.* George DeB. Keim et al., Receivers, etc.

In an action by a locomotive engineer against a railroad company, for personal injuries due to a collision, it appeared that the accident occurred at H station, where a double-track road ended and a single-track extension began. About a mile south of H on the double-track road there was a cross-over switch running from the north-bound to the south-bound track. Plaintiff was engineer of passenger train No. 10 going north. In clear weather it was customary, when there were freight trains detained on the north-bound track between the switch and the station, for signals to be given by whistles from the forward engine at H to the rear engine near the switch, and if the south-bound track was clear, No. 10 would move on to it, pass by the freight trains and proceed on its way on the single-track extension. In foggy weather the forward engine near H would act as a pilot engine, running down on the south-bound track to the switch, while the conductor of the forward freight train would remain at H to signal any train coming south on the single-track extension. When the pilot engine passed beyond the switch, No. 10 would move on to the south-bound track. The morning when the accident occurred was extremely foggy. Engine No. 287 going north was stopped at H and behind it several coal trains. The operator at H telegraphed this to the dispatcher who replied that "No. 287 should arrange to get No. 10 around." No. 287 was accordingly run on to the south-bound track and moved down towards the

---

NOTE.—See the following editorial notes containing a full presentation of the authorities: Contributory negligence in entering or remaining in an employment, note to Limberg v. Glenwood Lumber Co. 49 L. R. A. 33; reliance upon orders as affecting contributory negligence of employee, note to Orman v. Mannix, 17 L. R. A. 602; contributory negligence as defense where injuries received in performance of duties outside original contract, note to Olsen v. Minneapolis & St. L. R. Co. 48 L. R. A. 806; disobedience of master's rules as constituting contributory negligence, note to Ford v. Chicago, R. I. & P. R. Co. 24 L. R. A. 657; relation of maxim *volenti non fit injuria* to defense of contributory negligence, note to O'Maley v. South Boston Gaslight Co. 47 L. R. A. 161.

cross-over switch. In the meantime No. 10 had arrived at the switch and slowed up. The conductor of the rear coal train, who was at the switch, signaled No. 10 to come on. Plaintiff accordingly ran No. 10 on to the south-bound track and increased his speed to 15 or 20 miles an hour in spite of the fog. Immediately afterwards his train collided with No. 287 and he was severely injured. The rules of the company prohibited running on the south-bound track and also required proper signals to be sent forward in case of detention. *Held*, that there was no error in entering a compulsory nonsuit.

(Argued March 5, 1888.  Decided April 23, 1888.)

January Term, 1888, No. 285, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ.  Error to the Common Pleas of Northampton County to review a judgment of compulsory nonsuit in an action on the case for personal injuries, October term, 1886, No. 34.  Affirmed.

This action was brought by Charles Wert against the receivers of the Philadelphia & Reading Railroad Company, to recover damages for personal injuries caused by the alleged negligence of the defendant.

The facts as they appeared at the trial before REEDER, J., were as follows:

The Philadelphia & Reading Railroad Company leased the Lehigh & Susquehanna division of the Lehigh Coal & Navigation Company's railroad.  Hazard station was situated on this division.  November 14, 1885, Charles Wert, the plaintiff, was an engineer upon a passenger train known as No. 10, which left Easton at 7 : 15 A. M.  A double track extended from Easton to Hazard station 37½ miles, but from Hazard station to Mauch Chunk, 14 miles, there was only a single track.  At the north end of the double track was Hazard station.  About a mile south of the station toward Easton there was a cross-over switch from the north-bound track to the south-bound track.  The track between the station and the cross switch was straight.  It sometimes happened that freight trains being delayed at Hazard would fill up the north track from the station to the cross-over switch.  In such a case when passenger train No. 10 arrived at the cross-over switch, the conductor and engineer of the train farthest north would guard the north end of the double track by a flag so as to keep the south-bound trains out of the way,

and when the weather was clear, so that men could see from the station to the cross-over switch, the engine of the forward train would sound five whistles and they would be repeated by the engine of each train standing on the north track, and the conductor of the most southerly train would then give the signal for the switch to be opened and for No. 10 to go on. On a foggy morning, or whenever the track could not be seen from the switch to the station, the engine of the first train to the north would run down as a pilot engine on the south track below the switch, the conductor of the northern-most train remaining at the end of the double track to flag any train coming south. When the pilot engine got beyond the cross-over switch, the signal was then given, and No. 10 would move on to the south-bound track.

The morning of November 14, 1885, was extremely foggy. The plaintiff and other witnesses testified that the fog was so dense that it was impossible to see further than the length of a passenger train—an engine and four cars. Before he reached the cross-over switch, engine No. 287 (called an extra) was stopped at the end of the double track, as several sections of No. 69 coal were coming south. Behind this train were two sections of No. 54 freight, also stopped from the same cause. The operator at Hazard, having telegraphed the train dispatcher at Mauch Chunk, that train 287 was stopped, then received a telegram that "engine 287 should arrange to get No. 10 around." He at once informed Daniel Raub, the conductor of the train, of the order, and he directed Daniel Moyer, the engineer of 287, to run down to the cross-over switch to pilot No. 10, and Raub himself took the flag and went up the track with the flag, while engine 287 ran from the north to the south track at the end of the double track and backed down toward the cross-over switch at the speed of 3 or 4 miles an hour until it met and collided with No. 10 and the plaintiff was injured.

The plaintiff testified that when he came to the cross-over switch he shut off steam and ran slow, but when he was given the signal by a man whom he recognized as Transue, the conductor of the rear coal train, he turned on steam and proceeded on to the south track at the rate of 15 or 20 miles an hour. He was asked whether the printed rules of the company did not prohibit him from running on the south-bound track. To this question he answered "Yes."

*Q.* In the face of this rule, you could not have passed to the south-bound track, could you?

*A.* No, sir.

*Q.* By what authority did you get over there?

*A.* Just by those men giving me signals to go ahead and turning the switch. I supposed I was protected.

The plaintiff was asked whether he thought it prudent and safe to run his train at the speed he did in a fog, under the circumstances. He said, yes; but further testified that if he had been running 4 or 5 miles an hour, he could have stopped his train in the length of the train.

Rule 54 of the company was as follows:

"The conductor is held responsible to see that his flagman goes back promptly, and both he and the engineer are responsible for sending out proper signals in front when the detention or obstruction makes it necessary."

Rule 60 was: "Remember in all cases of doubt or uncertainty, take the safe course and run no risks."

Transue testified: "No. 10 was due when I opened the switch, and I knew by the schedule the track was clear; I knew nothing of special orders to send a pilot engine down that morning. I supposed it perfectly safe for No. 10 to go up that morning as she had done many times before. This was the custom and that custom imposed upon me the duty of opening the switch."

The court entered a compulsory nonsuit.

The assignments of error specified the action of the court in entering a nonsuit.

*Wm. C. Shipman* and *Jno. C. Merrill,* for plaintiff in error.—In testing the validity of a nonsuit the plaintiff is entitled to the benefit of every inference of fact which might have been fairly drawn by a jury from the evidence before them. Hill v. Nation Trust Co. 108 Pa. 1, 56 Am. Rep. 189; Maynes v. Atwater, 88 Pa. 496; Howard Exp. Co. v. Wile, 64 Pa. 201; Schum v. Pennsylvania R. Co. 107 Pa. 8, 52 Am. Rep. 468; McCully v. Clarke, 40 Pa. 406, 80 Am. Dec. 584; Reeves v. Delaware, L. & W. R. Co. 30 Pa. 454, 72 Am. Dec. 713; Pennsylvania R. Co. v. Zebe, 33 Pa. 318; Pennsylvania R. Co. v.

Ogier, 35 Pa. 71, 78 Am. Dec. 322; Carroll v. Pennsylvania R. Co. 12 W. N. C. 348.

The accident was caused by the negligence of the train dispatcher, and the company is liable. Lewis v. Seifert, 116 Pa. 628, 2 Am. St. Rep. 631, 11 Atl. 514; Murphy v. Crossan, 98 Pa. 495; Baker v. Allegheny Valley R. Co. 95 Pa. 211, 40 Am. Rep. 634.

Where a master interferes and gives directions to his employees who are working according to their own judgment and skill, he then becomes responsible for the negligent act of a fellow servant following the directions of the master; and that is a question of fact for the jury. Ardesco Oil Co. v. Gilson, 63 Pa. 146; Lee v. Woolsey, 109 Pa. 124; Grand Trunk R. Co. v. Cummings, 106 U. S. 700, 27 L. ed. 266, 1 Sup. Ct. Rep. 493; North Pennsylvania R. Co. v. Mahoney, 57 Pa. 187; Ellis v. New York, L. E. & W. R. Co. 95 N. Y. 546; Cone v. Delaware, L. & W. R. Co. 81 N. Y. 207, 37 Am. Rep. 491; Lawless v. Connecticut River R. Co. 136 Mass. 1; Elmer v. Locke, 135 Mass. 575.

The verbal orders to the coal crews to do the rounding were not sufficient for railroad purposes. Chicago, B. & Q. R. Co. v. McLallen, 84 Ill. 109; Paulmier v. Erie R. Co. 34 N. J. L. 151; Sheehan v. New York C. & H. R. R. Co. 91 N. Y. 332.

Where there is any doubt whether the employee was acquainted or ought to have been acquainted with the risk, the determination of the question is necessarily for the jury. Rummell v. Dilworth, P. & Co. 111 Pa. 343, 2 Atl. 355, 363; Patterson v. Pittsburg & C. R. Co. 76 Pa. 389, 18 Am. Rep. 412.

*Edward J. Fox, Jr.,* and *Edward J. Fox,* for defendants in error.—The plaintiff was guilty of contributory negligence, and cannot recover. He also has no right of action because the accident was due in part to Transue, a fellow employee.

According to Wert's testimony, Transue opened the switch at the south-bound track and gave the signal to come on. This was gross negligence on Transue's part, because he could not see whether the south track was clear up to Hazard, on account of the dense fog. No signal of any kind had been given that the track was clear, and he had neither verbal, written, nor telegraph orders from the superintendent, train master, or train dispatcher, to open the switch or to round No. 10.

"It seems to be now perfectly well settled in England, and mostly in this country, that a servant who is injured by the negligence or misconduct of his fellow servant can maintain no action aganst the master for such injury." Redfield, Railways, § 170, pl. 1, cited by READ, J. in Weger v. Pennsylvania R. Co. 55 Pa. 465, as the rule in Pennsylvania.

Where several persons are engaged in a common employment, and one of them is injured by the carelessness of another, the employer is not responsible. Ryan v. Cumberland Valley R. Co. 23 Pa. 384.

An employer is not bound to indemnify an employee for losses in consequence of the ordinary risks of business, nor of the negligence of another person employed by the same employer in the same general business, unless he has neglected to use ordinary care in the selection of the culpable employee. Caldwell v. Brown, 53 Pa. 453. See also Lehigh Valley Coal Co. v. Jones, 86 Pa. 432; National Tube Works Co. v. Bedell, 96 Pa. 179, and Keystone Bridge Co. v. Newberry, 96 Pa. 246; Johnston v. Pittsburgh & W. R. Co. 114 Pa. 443, 7 Atl. 184.

That Transue was a coemployee is clear from the cases already quoted, and especially from New York, L. E. & W. R. Co. v. Bell, 112 Pa. 400, 4 Atl. 50, which states the principle very clearly.

The company was not guilty of negligence.

Plaintiff cannot recover, because by remaining in the defendants' employ, when he was cognizant of the risk to which he was subjected, without protest or promise of amendment on the part of the defendants, he waived any right to recover from them by reason of any alleged negligence on their part. Brossman v. Lehigh Valley R. Co. 113 Pa. 491, 57 Am. Rep. 479, 6 Atl. 226.

PER CURIAM:

We agree with the court below, that the plaintiff was so clearly negligent in the discharge of his duty as to have been the principal cause in the production of the accident by which he was injured, and that, as a consequence, a nonsuit was properly ordered.

Judgment affirmed.